******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KWEKU HANSON *v.* COMMISSIONER OF
CORRECTION
(AC 37389)

Beach, Mullins and Bishop, Js.

*Argued September 8—officially released November 15, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Young, J.)

*Kweku Hanson*, self-represented, with whom, on the
brief, was *Norman A. Pattis*, for the appellant (peti-
tioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Angela R. Macchiarulo*, senior assistant state's attorney, and *Tamara A. Grosso*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Kweku Hanson, appeals from the judgment of the habeas court denying his petition for certification to appeal from the court's denial of his habeas corpus petition. Specifically, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and erred in concluding that (1) Attorney Salvatore Bonanno did not represent the petitioner in the underlying criminal proceedings and therefore could not be the focus of an ineffective assistance of counsel claim; (2) Attorney Donald Freeman's representation of the petitioner was not ineffective; and (3) Assistant State's Attorney Thomas O'Brien's prosecution of the petitioner's cases in the criminal proceedings was not improper. We disagree with the petitioner and dismiss the appeal.

The record reveals the following relevant factual and procedural history. The petitioner, an attorney who had practiced law for more than eighteen years, was arrested on four separate occasions on a number of charges arising from allegations that he had sexual relations with two minors, videotaped himself having sexual intercourse with one victim, took sexually provocative pictures of both victims, and later threatened those victims in an effort to dissuade them from cooperating in the prosecution of his cases. He was first arrested on September 23, 2005, and subsequently arrested on January 11, 2006, March 1, 2007, and April 4, 2007.

On August 2, 2007, while self-represented, the petitioner pleaded guilty on a substitute information to the following counts: two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1); two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2); two counts of tampering with a witness in violation of General Statutes § 53a-151; and one count of possession of child pornography in the first degree in violation of General Statutes § 53a-196 (d). The court, *White, J.*, continued the case for sentencing, and, during that time, the petitioner unsuccessfully tried to withdraw his guilty pleas.

On November 2, 2007, pursuant to the petitioner's August 2 pleas, the court, *Koletsky, J.*, imposed upon the petitioner a total effective sentence of twenty-five years of incarceration, execution suspended after six years, and thirty years of probation. The petitioner directly appealed the court's judgments of conviction, which this court affirmed. *State* v. *Hanson*, 117 Conn. App. 436, 979 A.2d 576 (2009), cert. denied, 295 Conn. 907, 989 A.2d 604, cert. denied, 562 U.S. 986, 131 S. Ct. 425, 178 L. Ed. 2d 331 (2010).

Thereafter, the self-represented petitioner instituted this habeas action and, on March 4, 2013, filed his second amended petition for a writ of habeas corpus. In

his petition, the petitioner alleged, inter alia, ineffective assistance of counsel as to Bonanno and Freeman and prosecutorial vindictiveness as to O'Brien.[1] Following a five day trial, the habeas court, *Young, J.*, denied the petition in a written memorandum of decision.[2] The petitioner then filed a petition for certification to appeal from the habeas court's denial of his petition for a writ of habeas corpus, which the habeas court denied. This appeal followed. Additional factual and procedural history will be set forth as necessary.

We begin by setting forth our general standard of review. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion." *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). In order to prove an abuse of discretion, the petitioner must show "that the issues are debatable among jurists of reason; that the court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis in original; internal quotation marks omitted.) Id., 616. "If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." Id., 612.

"The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Questions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009).

To the extent that the habeas court relies on credibility determinations of witnesses in deciding the issues, this court must defer to the trier of fact's assessment of the credibility of the witness that is "made on the basis of its firsthand observations of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 268, 112 A.3d 1 (2015). We turn now to the petitioner's specific claims.

I

The petitioner's first claim on appeal is that the habeas court abused its discretion when it denied his petition for certification to appeal from the court's dismissal of his claim of ineffective assistance of counsel as to Bonanno. The habeas court dismissed the claim after determining that Bonanno was not acting as the petitioner's counsel, and, therefore, could not properly be the focus of a claim of ineffective assistance of counsel. The respondent, the Commissioner of Correction, argues that the habeas court correctly concluded that the petitioner failed to show that Bonanno was acting as his counsel in the underlying criminal proceed-

ings. We agree with the respondent.

The following additional facts are relevant to our resolution of this claim. On March 16, 2007, Bonanno was present in court on the petitioner's behalf without having filed an appearance. There, he told the court, *Prescott, J.*, that he was in discussions with the petitioner's family about being retained, and he asked for a short continuance. When Bonanno returned to court on March 19, 2007, he informed the court, *Prescott, J.*, that he would not be filing an appearance on the petitioner's behalf, as he could not work out payment arrangements with the petitioner's family. The record reveals that, at this juncture, Bonanno had been paid $15,000 by the petitioner's family, an amount less than he would require if the petitioner's three files were tried separately, which is how he believed the state would proceed. Bonanno subsequently returned the $15,000 to the petitioner's family. As Bonanno was leaving the courtroom, the petitioner stated that he was interested in discussing a plea deal that day. The court asked Bonanno if he would be willing, even though he had not been retained, to discuss the petitioner's matters with the court, *Gold, J.*, and O'Brien in order to facilitate a plea negotiation with the incarcerated petitioner. Bonanno agreed to "speak with [the court] in chambers, and then report back to [the petitioner]," and the petitioner said he would be "content for [Bonanno] to be standby counsel . . . ."

At the habeas trial, Bonanno testified that during the off-the-record discussions that followed, "Mr. O'Brien conveyed some offer, I shared it with [the petitioner]. There were some things [the petitioner] didn't like, [the petitioner] asked me to ask back, I did, and that was it. It wasn't . . . I don't think there was ever anything, any agreement, any meeting of the minds on a plea either . . . ."

When court resumed after these discussions, the court, *Gold, J.*, noted its concern with having Bonanno involved in the matter, stating to the petitioner: "You're going to have to be prepared to explain to me . . . on Wednesday when I inquire, exactly what [role] Mr. Bonanno is playing in this. . . . [W]hether you're proceeding pro se, whether you're proceeding pro se with standby counsel, namely, Mr. Bonanno, whether Mr. Bonanno is filing as counsel, but I'm told at this juncture that he has no official standing in the court . . . ." The court later stated, in the same colloquy with the petitioner, "I understand at this point you are appearing pro se," to which the petitioner responded, "that's correct."

Bonanno was in court on the petitioner's next court date of March 21, 2007, though the court, *Gold, J.*, noted that the petitioner still was representing himself. When asked by the court about Bonanno's role moving forward, the petitioner told the court that he had tried

unsuccessfully to retain counsel, someone other than Bonanno, and further stated that "I have no choice but to represent myself" and "as of today, I don't have legal counsel. I don't have legal counsel." Thereafter, the court and the petitioner agreed that Bonanno should be excused due to the fact that he had "no official role" in the petitioner's representation. Bonanno subsequently left the courtroom and the petitioner continued to represent himself.

At the habeas trial, the petitioner called Bonanno to testify regarding the petitioner's numerous claims of ineffective assistance of counsel against him. The state immediately moved for an offer of proof as to the relevance of Bonanno's testimony since he had never filed an appearance on the petitioner's behalf. The court allowed Bonanno to take the stand for a limited inquiry as to whether he ever was formally retained by the petitioner. Throughout the petitioner's questioning of Bonanno, the court reminded the petitioner that the questioning should be limited to that issue. Bonanno testified on direct-examination and cross-examination that he was not retained and that he told the criminal trial court, on multiple occasions, that he did not represent the petitioner. Finding that "there was no meeting of the minds, there was no retention of Mr. Bonanno to represent [the petitioner]," the habeas court orally dismissed the petitioner's ineffective assistance of counsel claim as to Bonanno. In its written memorandum of decision, the court highlighted, as further support for its decision, the fact that "[o]n March 21, 2007, the criminal court found that Attorney Bonanno had no official role in the criminal proceedings and the petitioner concurred."

It is of little significance that the habeas court limited Bonanno's habeas testimony solely to the issue of retention, as the court had before it the full record from the trial court proceedings. That record makes it clear, from the trial court's comments, Bonanno's comments, and the petitioner's various assertions on March 16, 19, and 21, 2007, that Bonanno was not acting as the petitioner's attorney. Accordingly, on the basis of our review of the record, we conclude that none of the facts, as found by the habeas court, is clearly erroneous, and that its ultimate conclusion that Attorney Bonanno did not represent the petitioner was amply supported by the record and, therefore, was legally correct.[3]

## II

The petitioner's second claim on appeal is that the habeas court abused its discretion when it denied his petition for certification to appeal from the court's rejection of his claim of ineffective assistance of counsel as to Freeman. Specifically, the petitioner contends that he was prejudiced by Freeman's deficient performance when Freeman failed to consult with the petitioner about what claims to assert in a substitute motion

to withdraw the petitioner's guilty pleas. Additionally, the petitioner contends that he was prejudiced by Freeman's deficient performance when Freeman failed to allow the petitioner to testify at a hearing on the substitute motion to withdraw. The respondent argues that the habeas court correctly concluded that the petitioner failed to show that Freeman rendered ineffective assistance. We agree with the respondent.

We begin with our standard of review relevant to this particular claim. We "cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Ricks* v. *Commissioner of Correction*, 98 Conn. App. 497, 502, 909 A.2d 567 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). In claims of ineffective assistance of counsel, "our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) Id.

In order to succeed on a claim of ineffective assistance of counsel, "a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . It is well settled that [a] reviewing court can find against a petitioner on *either* ground, whichever is easier." (Emphasis in original; internal quotation marks omitted.) *Couture* v. *Commissioner of Correction*, 160 Conn. App. 757, 766, 126 A.3d 585, 592, cert. denied, 320 Conn. 911, 128 A.3d 954 (2015).

In analyzing counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) Id., 767. We turn now to the petitioner's specific claims of ineffective assistance of counsel against Freeman.

## A

The petitioner first claims that the habeas court erred

in not finding that Freeman provided constitutionally deficient representation by failing to consult with him regarding the nature of the claims to raise in the substitute motion to withdraw the petitioner's guilty pleas. We are not persuaded.

The following additional facts are relevant to our resolution of this claim. The petitioner was self-represented at the time he pleaded guilty, and, after a canvass, the court, *White, J.*, accepted his pleas as knowingly, intelligently, and voluntarily made. The court, as well, found that the petitioner had knowingly and voluntarily waived his right to counsel. The petitioner testified at the habeas trial that he had been suffering from various medical issues while his files were pending and that he had wanted to be transported to the hospital because he felt he was not receiving adequate medical attention from the Department of Correction. He further testified that during various plea negotiations, O'Brien promised to have him transported to the hospital in exchange for pleading guilty. This alleged promise was not mentioned as part of the plea canvass, and when the petitioner was transported back to courthouse lockup after pleading guilty, and not the hospital, he immediately began drafting a motion to withdraw his pleas.

In the motion, filed pro se on September 17, 2007, the petitioner alleged, inter alia, that his guilty pleas were involuntary due to illness because he was "hallucinatory, lassitude, and delusional" at the time of his pleas "due to prescription pain pills, chest cyst, abdominal aches, hurting head, sleep deprivation, and nausea." Before his motion to withdraw his guilty pleas was heard, however, the petitioner retained Freeman, who, on October 19, 2007, filed a substitute motion to withdraw the petitioner's guilty pleas. The substitute motion did not include the petitioner's claim that his pleas were involuntary due to medical duress and instead alleged that the court's plea canvass did not comply with Practice Book §§ 39-19 (2), (3) and (4), or 39-20. Specifically, the petitioner, through Freeman, claimed in the substitute motion that it was insufficient for the court to ask the petitioner, a self-represented attorney, if he was familiar with the range of sentences for the crimes to which he was pleading guilty rather than discussing the sentence range and minimum mandatory sentences on the record.

The petitioner testified at the habeas trial that he wanted Freeman to "raise the claim that [the petitioner's pleas were] not voluntary because [the petitioner] had [a] serious medical condition." Freeman testified at the habeas trial that "the only reasonable chance . . . to get that motion granted to vacate [the petitioner's] pleas was that Judge White . . . failed to articulate the minimum mandatory penalties . . . ." He further testified that the petitioner's claim that his pleas

were involuntary due to medical duress "would not fly" and had "no chance at all." Freeman also testified that his decision to include certain claims in the substitute motion was a strategy decision, which he had discussed with the petitioner.

The habeas court, in denying the petitioner's claim, found no basis for the petitioner's claim that Freeman should have incorporated the petitioner's medical claims in his motion to withdraw the petitioner's guilty pleas. The court concluded: "Attorney Freeman was in the best position to determine proper strategy for successful prosecution of the motion."

This court previously has determined that it is an appropriate and sound strategy for an attorney to determine which arguments to present on behalf of his client. See *Saucier* v. *Commissioner of Correction*, 139 Conn. App. 644, 652-53, 57 A.3d 399 (2012) ("strategy of culling out weaker claims is sound, not deficient, practice"), cert. denied, 308 Conn. 907, 61 A.3d 530 (2013). The habeas court found that the petitioner failed to demonstrate that Freeman's decision not to raise a claim of medical duress in the substitute motion was anything short of such an appropriate and sound strategy. Because the record of the habeas proceedings provides support for the court's determination, we conclude that the habeas court did not err in finding that the petitioner had not satisfied his burden of proving that Freeman's performance was constitutionally deficient as to this claim.

B

The petitioner next claims that the habeas court erred in not finding that Freeman provided constitutionally deficient representation by failing to allow him to testify at the hearing on the substitute motion to withdraw the petitioner's guilty pleas. We are not persuaded.

The following additional facts are relevant to our resolution of this claim. The petitioner did not testify at the October 26, 2007 hearing on the petitioner's substitute motion to withdraw his guilty pleas. After the court heard argument on the motion, Freeman relayed to the court that the petitioner wanted to testify but that Freeman did not want to put him on the stand. After some discussion, the court noted to Freeman that the petitioner "is looking like he's going to burst if he doesn't get to whisper to you." Freeman and the petitioner then had a brief discussion off the record, but nothing further was mentioned about the petitioner's testifying, and the petitioner did not address the court about his desire to testify. The court denied the petitioner's substitute motion to withdraw his guilty pleas.

The petitioner testified at the habeas trial that Freeman unilaterally decided not to put him on the stand to testify at the hearing. In contrast, Freeman testified that he *did* discuss this decision with the petitioner and

"strongly counseled" him against testifying and that the petitioner agreed with him. Freeman testified that he felt the petitioner would hurt his case by testifying at the hearing because he was not in control of his anger. In denying the petitioner's claim of ineffective assistance of counsel, the habeas court credited Freeman's testimony that he advised the petitioner not to testify and that the petitioner heeded this advice, and it further noted that "[t]he petitioner did not attempt to take the stand or voice any objection when Attorney Freeman indicated to the court that he was not calling the petitioner. This is a decision of litigation strategy that is presumptively reasonable, and which the petitioner has not rebutted."

We note that "[a]lthough a defendant has the right to testify on his or her behalf, that privilege is not triggered unless he or she takes some affirmative action regarding his right to testify. . . . The accused must act affirmatively. While the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, the if and when of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." (Citations omitted; internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 45, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002). In the habeas court, the petitioner failed to demonstrate that Freeman prevented him from testifying or that his advice to the petitioner not to testify was deficient. Rather, the evidence credited by the habeas court was that Freeman strongly urged the petitioner not to testify, that there was a reasonable basis to the advice, and that the petitioner ultimately acceded to this advice.

Accordingly, we conclude that the habeas court did not err in finding that the petitioner had not satisfied his burden of proving that Freeman's performance was constitutionally deficient as to this claim.

III

The petitioner's third claim on appeal is that the habeas court abused its discretion when it denied his petition for certification to appeal from the court's rejection of his claim that his criminal cases were vindictively prosecuted by O'Brien. Specifically, the petitioner contends that O'Brien withdrew a favorable plea offer because the petitioner hired an attorney and filed a request for a bond hearing and discovery motions. The respondent argues that the habeas court correctly concluded that the petitioner failed to show that O'Brien engaged in vindictive prosecution. We agree with the respondent.

We begin with our standard of review relevant to this particular claim. "A . . . court's factual findings on prosecutorial vindictiveness are reviewed for clear

error and the legal principles which guide the . . . court are reviewed de novo." (Internal quotation marks omitted.) *State* v. *Lee*, 86 Conn. App. 323, 326, 860 A.2d 1268 (2004), cert. denied, 272 Conn. 921, 867 A.2d 839 (2005).

In order to succeed on a claim of prosecutorial vindictiveness in the pretrial setting, "the [petitioner] must show actual vindictiveness on the part of the prosecutor. To establish an actual vindictive motive . . . the [petitioner] must show that (1) the prosecutor harbored genuine animus toward the [petitioner], or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a stalking horse, and (2) [the petitioner] would not have been prosecuted except for the animus." (Internal quotation marks omitted.) Id., 328.

The following additional facts are relevant to our disposition of this claim. On April 11, 2007, after the petitioner was arrested on a fourth criminal file, O'Brien offered the petitioner a nine month sentence in exchange for the petitioner's guilty plea to one count of sexual assault in the second degree. The petitioner, who was self-represented at the time, asked for time to consider the offer, to which the court, *Prescott, J.*, stated: "I want you to understand . . . that if I give you a month continuance to consider the offer, that nothing else is going to be happening on your case during that time period." With the petitioner's confirmation that he understood, the court gave him until May 9, 2007, to accept or reject the state's offer.

On April 17, 2007, with the offer still pending, Attorney Aaron Romano entered an appearance on behalf of the petitioner on all four files and filed discovery motions and a motion for bond reduction. At a hearing on the bond reduction motion on April 24, 2007, O'Brien stated "there is no offer on the table at this time. But my understanding is that this was continued so that [the petitioner] would consider an offer and nothing was going to be done in between. From the state's vantage point from bringing in counsel, filing additional request for discovery, the federal action, the request for the bond reduction, that [a]ffects the state's position." O'Brien testified at the habeas trial that he withdrew the offer on April 24, 2007, because the petitioner violated the agreement that there would be "[n]o motions, no changes, no activity on the file other than we come in May [9], accept or reject."

In denying the petitioner's claim of prosecutorial vindictiveness, the habeas court found that the claim was "contrary to the record" and found "no credible evidence of vindictiveness." In so finding, it relied on the fact that both the court and O'Brien stated on the record that the April 11 offer was contingent on there being no intervening circumstances[4] and the "appearance of Attorney Romano and the filing of motions constituted

intervening circumstances."

On the basis of our review of the record, we conclude that the habeas court did not err in finding that the petitioner had not satisfied his burden of proving that his cases were vindictively prosecuted by O'Brien.

In light of the foregoing, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal because the petitioner has failed to show that his claims involve issues that are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner asserted nine other claims in his second amended petition for a writ of habeas corpus, all of which were denied by the habeas court. Because he did not pursue any of those claims on appeal, we deem them abandoned.

[2] During trial, the court orally dismissed some of the claims and reiterated those dismissals in its written decision.

[3] We caution that in reaching this conclusion, we do not hold that the filing of an appearance is the sole determinant of whether an attorney actually is representing a defendant. Rather, it is one factor to be considered as part of the circumstances to be assessed by the trial court when confronted with a question of representation for sixth amendment purposes. Given the totality of the circumstances in this particular situation, we find no error in the court's determination that Bonanno was not acting as the petitioner's attorney in the criminal proceedings, and, therefore, the petitioner could not successfully assert an ineffective assistance of counsel claim regarding Bonanno's performance.

[4] We note that the habeas court later stated: "There is no evidence that Attorney O'Brien withdrew the offer." While this statement appears to be contradicted by the record, we find no fault with the court's ultimate conclusion on this issue that the prosecutor's withdrawal of a plea offer did not amount to "credible evidence of vindictiveness."