******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PATTON E. DUNCAN *v.* COMMISSIONER
OF CORRECTION
(AC 37366)

DiPentima, C. J., and Keller and West, Js.

*Argued October 25, 2016—officially released March 21, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Craig A. Sullivan*, assigned counsel, for the appellant (petitioner).

*Nancy L. Walker*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Patton E. Duncan, a citizen of Jamaica,[1] appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying certification to appeal, (2) improperly concluded that he had received the effective assistance of counsel and (3) improperly denied his due process claim that his pleas were not made knowingly and voluntarily. Because the petitioner did not demonstrate that the habeas court abused its discretion in denying the petition for certification to appeal, we dismiss the appeal.

The following facts and procedural history are relevant to this appeal. The petitioner was charged in two separate informations as a result of events that had occurred at different times in different locations. On April 20, 2011, the petitioner appeared before the court, *Vitale*, *J.*, and pleaded guilty, pursuant to the *Alford* doctrine,[2] to one count of larceny in the third degree (Hartford case). At this time, the prosecutor recited the facts underlying this plea: "Your Honor, this matter goes back to November of 2009. At that time, [the petitioner] was apparently estranged from his wife . . . . A check came into the residence that they were sharing at that time made out to [the petitioner's wife] in the amount of $6000. The [petitioner] endorsed that check, deposited it to his own account, and took out $6000 of the funds for his own use, thus depriving his estranged wife of the money."

The prosecutor then stated that if the petitioner paid $6000 to his estranged wife, then the state would agree to vacate the plea and nolle the larceny charge. During the canvass, the court informed the petitioner that the case would be continued for sentencing until July 29, 2011. Further, it instructed that if the petitioner appeared on that day with a certified bank check in the amount of $6000, the guilty plea would be vacated and the state would nolle the larceny charge. The court warned the petitioner that if he did not have the $6000, he would be sentenced to up to fifteen months incarceration.

The court then asked the following question to the petitioner: "Do you understand, sir, if you are not a United States citizen this could result in your being deported, excluded from the United States or denied naturalization; do you understand that?" The petitioner replied: "Yes, Your Honor." The court also expressly warned the petitioner that it would not grant any additional continuances past July 29, 2011. The court then found that the petitioner's plea was knowingly and voluntarily made with the assistance of counsel, Attorney Deron Freeman.

On July 29, 2011, the petitioner appeared for sentencing with $3000.[3] The state requested a period of nine months incarceration. Freeman argued that the petitioner had used the $6000 to maintain the household while his estranged wife was incarcerated. Freeman further requested a suspended sentence. After reviewing the case file, the court sentenced the petitioner to fifteen months incarceration, execution suspended after sixty days, and three years of probation. The court also ordered full restitution within the first two years of probation.

On September 15, 2011, the petitioner appeared before the court, *Sheridan, J.*, to plead guilty to assault in the third degree in violation of General Statutes § 53a-61 and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (New Britain case). The prosecutor recited the following factual basis for the pleas: The petitioner was involved in a physical altercation with his girlfriend. At this time, the petitioner struck the victim, causing her pain and injuries, while she was holding her one year old son.

During the plea canvass, the court stated: "All right, and if you're not a U.S. citizen, with this conviction you may face consequences of deportation, exclusion for readmission or denial of naturalization pursuant to federal law." The petitioner indicated that he understood these consequences of his guilty plea. The court then found that the plea was voluntarily and knowingly made with the assistance of competent counsel. The court ordered consecutive sentences of one year of incarceration, execution suspended, with two years of probation, for the assault in the third degree and reckless endangerment charges. The defendant was represented by Attorney Kelly Goulet-Case, an assistant public defender.

On October 11, 2011, Judge Sheridan held a hearing on the petitioner's motion for modification in the New Britain case. During that proceeding, the prosecutor noted that she had no objection to the plea on the reckless endangerment charge being vacated. She further agreed to nolle that charge, leaving only the conviction of assault in the third degree in the New Britain case. The court granted the petitioner's motion for modification.

On October 5, 2011, the United States Department of Homeland Security commenced removal proceedings against the petitioner on the ground that his conviction of larceny in the third degree constituted an aggravated felony pursuant to 8 U.S.C. § 1227 (a) (2) (A) (iii). On February 29, 2012, an immigration judge ordered the petitioner removed to Jamaica. The United States Board of Immigration Appeals dismissed the appeal from the order of the immigration judge. Thereafter, the petitioner was deported from the United States to Jamaica

in February, 2013.[4]

In November, 2011, the petitioner commenced the present action. The operative petition was filed on April 22, 2014. In count one, the petitioner alleged that his right to due process was violated because his pleas in the Hartford and New Britain cases were not knowingly, intelligently and voluntarily made. The petitioner further claimed that he did not know or understand the probability of deportation and/or removal under the terms of his plea agreements.

In counts two and three, the petitioner claimed that Freeman and Goulet-Case provided ineffective assistance of counsel in the Hartford and New Britain cases, respectively. Specifically, he alleged that both of his attorneys failed (1) to research adequately the legal issue of the petitioner's immigration status and the possibility of deportation and/or removal as a result of the plea agreements, (2) to advise the petitioner that larceny is an aggravated felony for immigration purposes, subjecting him to automatic removal and ineligibility for cancelation of removal and (3) to make the petitioner's immigration status part of the plea bargaining process. The petitioner also alleged that but for the deficient performance of his attorneys, he would not have pleaded guilty and instead insisted on going to trial.

The court, *Fuger, J.*, held the habeas trial on September 3, 2014, during which Freeman, Goulet-Case, Attorney Anthony Collins, an expert in immigration law,[5] and the petitioner testified.[6] On September 18, 2014, the court issued a memorandum of decision denying the petition for a writ of habeas corpus. With respect to the ineffective assistance of counsel claim against Freeman in the Hartford case, the habeas court concluded that the petitioner had failed to establish deficient performance and prejudice. With respect to the New Britain case, the habeas court determined that Goulet-Case performed deficiently by assuming that the petitioner was a United States citizen. The habeas court then noted that the New Britain case "played no part in the immigration issue, and there was no showing of any other prejudice incurring to the petitioner . . . ." Although the court did not explicitly address the petitioner's due process claim, it denied the petition for a writ of habeas corpus and the subsequent petition for certification to appeal.

Following the filing of this appeal, the petitioner filed a motion for articulation, requesting that the court address his due process claim. After the habeas court denied this motion, the petitioner filed a motion for review with this court. We granted that motion and the relief requested, ordering the habeas court to articulate whether it had denied count one of the habeas petition and, if so, on what basis. On October 22, 2015, the habeas court issued its articulation. The court explained

that the petitioner's due process claim was "wholly dependent on the claims alleged in the other two counts. . . . Stated somewhat differently, the petitioner cannot prevail on the claim in count one, as it is factually and legally pleaded, without also proving the claims in counts two and three." The court further clarified that the petitioner's due process claim implicitly had been denied on the same grounds as the ineffective assistance of counsel claims in counts two and three of the operative habeas petition. Additional facts will be set forth as necessary.

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal[7] from the denial of his petition for a writ of habeas corpus with respect to his claims of ineffective assistance of counsel and due process violations. Specifically, he argues that because these issues are debatable among jurists of reason, a court could resolve the issues differently or the issues should proceed further, the habeas court abused its discretion in denying his petition to appeal.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, A.3d (2016); see also *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 428–29, 1 A.3d 1242 (2010), cert. denied,

302 Conn. 901, 23 A.3d 1241 (2011). With these principles in mind, we turn to the substantive claims of the petitioner.

I

The petitioner claims that the habeas court improperly concluded that he received the effective assistance of counsel. Specifically, he argues that the court improperly determined that (1) Freeman did not provide deficient performance and (2) the petitioner was not prejudiced in both the Hartford case and by Goulet-Case in the New Britain case. We agree with the petitioner's first argument. With respect to the issue of prejudice in both the Hartford and New Britain cases, we conclude that the petitioner's appellate argument is unavailing and, therefore, his claims of ineffective assistance of counsel must fail. As a result, we conclude that the habeas court did not abuse its discretion in denying certification to appeal from the denial of the petition for a writ of habeas corpus. See *Sanders* v. *Commissioner of Correction*, supra, 169 Conn. App. 827–38 (reviewing court considered merits of petitioner's claims as to performance and prejudice and concluded that because there was no prejudice, petitioner could not establish abuse of discretion in denial of petition for certification to appeal).

As a preliminary matter, we set forth the legal principles and the standard of review that guide our analysis. The sixth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, affords criminal defendants the right to effective assistance of counsel. *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 554, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, U.S. , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016); see also *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100, 111 A.3d 829 (2015) (criminal defendant constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings). Although a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard, "whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 469–70, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, U.S. , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013); *Helmedach* v. *Commissioner of Correction*, 168 Conn. App. 439, 451, 148 A.3d 1105, cert. granted on other grounds, 323 Conn. 941, A.3d (2016).

It is well established that the failure to adequately

advise a client regarding a plea offer from the state can form the basis for a sixth amendment claim of ineffective assistance of counsel. "The United States Supreme Court, long before its recent decisions in *Missouri* v. *Frye*, U.S. , 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Lafler* v. *Cooper*, U.S. , 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), recognized that the two part test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to ineffective assistance of counsel claims arising out of the plea negotiation stage. *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) . . . ." (Citation omitted.) *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 792, 93 A.3d 165 (2014); see also *Helmedach* v. *Commissioner of Correction*, supra, 168 Conn. App. 452.

Finally, we recite the familiar test that governs whether a petitioner's constitutional right to the effective assistance of counsel has been violated. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. . . . The petitioner has the burden to establish that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . It is not enough for the petitioner to simply prove the underlying facts that his attorney failed to take a certain action. Rather, the petitioner must prove, by a preponderance of the evidence, that his counsel's acts or omissions were so serious that counsel was not functioning as the counsel guaranteed by the sixth amendment, and as a result, he was deprived of a fair trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jones* v. *Commissioner of Correction*, 169 Conn. App. 405, 415–16, A.3d (2016), cert. denied, 324 Conn. 909, A.3d (2017); see also *Hanson* v. *Commissioner of Correction*, 169 Conn. App. 317, 325, 150 A.3d 234 (2016), cert. denied, 324 Conn. 910, A.3d (2017).

"For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . [S]ee

also *Hill* v. *Lockhart*, [supra, 474 U.S. 59] (modifying *Strickland* prejudice analysis in cases in which petitioner entered guilty plea). It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier. *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016), citing *Strickland* v. *Washington*, supra, 466 U.S. 697 (a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner])." (Citation omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 278, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906,     A.3d     (2017); see also *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 832–33, 950 A.2d 1220 (2008); *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 598, 940 A.2d 789 (2008); *Alcena* v. *Commissioner of Correction*, 146 Conn. App. 370, 372–73, 76 A.3d 742, cert. denied, 310 Conn. 948, 80 A.3d 905 (2013).

A

The petitioner first argues that the habeas court improperly concluded that Freeman's performance was not deficient. Specifically, he contends that Freeman did not meet this standard because he failed to inform him of the likely immigration consequences as a result of his guilty plea in the Hartford case. We agree.

The following additional facts are necessary for our discussion. At the habeas trial, Freeman testified that he could not recall advising the petitioner that if he pleaded guilty to larceny in the third degree with a sentence of greater than twelve months and that charge was not subsequently nolled, the petitioner would be deportable without a defense. Freeman admitted that he probably was unaware that larceny in the third degree and a sentence greater than twelve months constituted an aggravated felony for federal immigration purposes. He also acknowledged that he likely was unaware of the fact that a conviction of an aggravated felony would result in a lawful permanent resident being deportable without a defense. Freeman, without a specific recollection of the events pertaining to this case, stated that his general practice was to advise clients facing possible immigration consequences to consult with an immigration attorney.[8] Freeman claimed that he knew of the United States Supreme Court's decision in *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), at the time of the plea canvass in the Hartford case, but could not recall if he had conducted any legal research with respect to the immigration issue.

The petitioner testified that Freeman could not provide a "firm yes or no answer" regarding the petitioner's immigration status. The petitioner also stated that Freeman tried to assure him that "as far as he could see, it

shouldn't be a problem."

In its memorandum of decision, the habeas court stated: "[I]t was clear that conviction of larceny in the third degree and a sentence in excess of one year would result in a near mandatory deportation for the petitioner. It is clear to this court that . . . Freeman was aware of such a draconic result and [took] appropriate steps to ensure that would not happen. This court is also satisfied that under the totality of the evidence and the logical inferences to be drawn therefrom that . . . Freeman did discuss the immigration implications with the petitioner. Moreover, it is also clear that the petitioner was advised and did have access to, as well as the ability to seek, more expert advice had he so desired."

In addressing the claim that Freeman was constitutionally deficient because he failed to advise the petitioner that deportation would be mandatory and nonappealable, the habeas court cited the *Padilla* decision, noting that counsel must inform the client when a plea presents a risk of deportation. The habeas court emphasized: "[T]he [United States] Supreme Court did not lay down a bright line that clearly defines the [parameters] of this duty, leaving that issue instead to the state courts. Here, in Connecticut, our appellate courts ha[ve] previously indicated that [a] defendant need only be made aware of the direct consequences of his plea for it to be valid. . . . Our Supreme Court has explained that [a]lthough a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense. . . . [U]nder Connecticut law, [t]he impact of a plea's immigration consequences on a defendant, while potentially great, is not of constitutional magnitude and cannot transform this collateral consequence into a direct consequence of the plea." (Emphasis omitted; internal quotation marks omitted.) It concluded that Freeman had satisfied the minimal standard in advising the petitioner of the immigration consequences of his guilty plea in the Hartford case, and therefore did not render deficient performance.

In order to assess this conclusion of the habeas court, a review of *Padilla* v. *Kentucky*, supra, 559 U.S. 356, and *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 142 A.3d 243 (2016), is necessary. In *Padilla*, the petitioner, a native of Honduras and lawful permanent resident of the United States for more than forty years, claimed that he had received ineffective assistance of counsel. *Padilla* v. *Kentucky*, supra, 359. Specifically, he contended that he had relied on erroneous advice from counsel and pleaded guilty to drug charges that made his deportation a virtual certainty. Id. The United States Supreme Court recognized that the land-

scape of federal immigration law had changed dramatically since 1920. Id., 360. It noted that "[t]he drastic measure of deportation or removal . . . is now virtually inevitable for a vast number of noncitizens convicted of crimes." (Citation omitted; internal quotation marks omitted.) Id. It subsequently observed that congressional actions have eliminated, or greatly reduced, the authority of federal judges and the United States Attorney General to grant discretionary relief from deportation. Id., 363. "Under contemporary law, if a noncitizen has committed a removable offense . . . his removal is practically inevitable . . . ." Id., 363–64.

The effect of this change to immigration law has "dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part— indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." (Footnote omitted.) Id., 364.

Turning to the issue of whether the petitioner had met his burden of establishing deficient performance, the court concluded that the "weight of prevailing professional norms [supported] the view that counsel must advise her client of the risk of deportation." Id., 367. It further noted that preserving the right to remain in the United States might be more important to the client than any jail sentence. Id., 368. Because of the "succinct, clear, and explicit" immigration consequences of his conviction; id.; which could have been easily determined by reading the relevant statute and the false assurance given to the petitioner that he would not be deported, the court determined that "[t]his is not a hard case in which to find deficiency . . . ." Id., 368–69.

The Supreme Court also distinguished cases where the immigration consequences were clear from those that were indeterminate. "Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. *But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear*." (Emphasis added; footnote omitted.) Id., 369.

Our Supreme Court considered the parameters of

*Padilla* in *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 506–507, by analyzing the question of what advice must be given to a noncitizen client who is pleading guilty to a crime that prescribes deportation pursuant to federal law. Piotr Budziszewski, a lawful permanent resident of the United States, was charged with two counts of selling narcotics by a person who is not drug-dependent and two counts of possession of narcotics with intent to sell. Id., 508. The attorney representing Budziszewski negotiated a plea agreement whereby he would plead guilty to one count of possession of a controlled substance with intent to sell, which did not require a mandatory minimum period of incarceration. Id. Budziszewski agreed to these terms, pleaded guilty and was sentenced to five years incarceration, execution suspended after ninety days and a period of probation. Id. Following his release from state custody, federal authorities detained Budziszewski as a result of his felony conviction and subsequently "entered a final order of removal . . . ." Id., 509.

Budziszewski commenced a habeas action, alleging, inter alia, ineffective assistance of counsel as a result of his counsel's having failed to advise him of the immigration consequences of his guilty plea as required by *Padilla*. Id. The habeas court determined that Budziszewski's conviction "qualified as an aggravated felony under federal immigration law, making [Budziszewski] subject to deportation, and further determined that [Budziszewski] did not fall within any exception or exclusion that would allow him to remain in the United States." (Internal quotation marks omitted.) Id., 510. The habeas court concluded that counsel was required to inform Budziszewski that he was subject to mandatory deportation and that warning him of a " 'heightened risk' "; id., 512; of deportation did not satisfy this requirement. Id., 510–12. The habeas court also agreed with Budziszewski's claim of prejudice and granted habeas relief. Id., 510.

In considering the appeal by the respondent, the Commissioner of Correction, our Supreme Court first noted the requirement that "when the immigration consequences under federal law are clearly discernable, *Padilla* requires counsel to accurately advise his client of those consequences. . . . For some convictions, federal law calls for deportation, subject to limited exceptions. . . . In those circumstances, because the likely immigration consequences of a guilty plea are truly clear, counsel has a duty to inform his client of the deportation consequences set by federal law." (Citations omitted; internal quotation marks omitted.) Id., 511–12. Addressing the issue of whether the immigration consequences were clearly discernable, it stated: "In the present case, the legal consequences faced by [Budziszewski] were clear, and federal law mandated deportation. [Budziszewski] was convicted of a drug

trafficking offense, which is designated as an aggravated felony under federal immigration law. 8 U.S.C. § 1101 (43) (B) (2012). Federal law calls for deportation for aggravated felony convictions, subject to limited exceptions, which the parties agree do not apply in [Budziszewski's] case. See 8 U.S.C. § 1227 (a) (2) (A) (iii) (2012*). Because federal law called for deportation . . . his counsel was required to unequivocally convey to [Budziszewski] that federal law mandated deportation as the consequence for pleading guilty. Warning only of a heightened risk of deportation . . . would not accurately characterize the law.*" (Emphasis added; footnotes omitted; internal quotation marks omitted.) *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 512.

Our Supreme Court also instructed that "there are no fixed words or phrases that counsel must use to convey this information, and courts reviewing *Padilla* claims must look to the totality of counsel's advice, and the language counsel actually used, to ensure that counsel accurately conveyed the severity of the consequences under federal law to the client in terms the client could understand." Id., 512–13. In other words, instead of looking for "magic words" or "safe harbor language"; (internal quotation marks omitted) id.; 513; a court's inquiry should be on the essence of the information given by counsel to be sure that it clearly and accurately informs the client of the immigration consequences in a manner understandable to the client. Id.; see also id., 516–17 n.2. "This requires the court to consider the totality of the advice given by counsel, make findings about what counsel actually told the client, and then determine whether, based on those findings, [Budziszewski] met his burden to prove that counsel's advice failed to convey the information required under *Padilla*." Id., 513–14.

As a result of these clarifications, our Supreme Court reversed the judgment of the habeas court and remanded the case for a new trial. Id., 516. It reasoned that the habeas court had not made factual findings "regarding what [the attorney] actually told [Budziszewski] about what federal law mandated . . . ." Id. Given the state of the record, particularly the conflicting testimony from Budziszewski and his attorney regarding the advice regarding the immigration consequences, a new trial was necessary. Id., 516–18. "On remand, therefore, the habeas court must make findings of fact about what [the attorney] actually told [Budziszewski] and then assess whether, based on those findings, [Budziszewski] has proven that [this] advice violated the requirements of *Padilla*, as clarified by our decision in the present case." Id., 518. Finally, it observed that the habeas court must presume that the attorney acted competently and that the burden was on Budziszewski to overcome this presumption and prove deficient performance. Id., 517 n.2.

Through the lens of *Budziszewski*, we now review the conclusion of the habeas court that Freeman did not perform deficiently in the Hartford case.[9] As previously noted, Freeman testified that he could not recall clearly advising the petitioner that he would be deportable without a defense, although it was his practice to have conversations with clients regarding the immigration consequences of a guilty plea. Freeman also admitted that he "[p]robably" was unaware that a conviction of larceny in the third degree with a sentence greater than one year constituted an aggravated felony for immigration purposes and that he was unaware that an aggravated felony rendered a noncitizen deportable without a defense. Freeman further testified that he generally did not conduct legal research on immigration issues for noncitizen criminal defendants.

In its memorandum of decision, the habeas court noted Freeman's testimony regarding his usual practice to "discover the ramifications of a conviction upon a person's immigration status and make sure that a defendant was aware that there could be consequences if the case resulted in a conviction." It further recited the testimony that Freeman understood immigration law sufficiently "to give somewhat summary advice to a defendant similarly situated to the petitioner" and that he would advise his clients to seek the advice of an immigration attorney if the client believed it was necessary. The habeas court, however, did not specifically credit or make a finding regarding these portions of Freeman's testimony.

The habeas court did find that a conviction of larceny in the third degree and a sentence of greater than one year would result in a "near mandatory deportation for the petitioner."[10] It further found that Freeman, mindful of this "draconian result"[11] discussed the immigration implications with the petitioner. In response to the petitioner's argument that Freeman failed to tell him that removal was mandatory and nonappealable, the habeas court indicated that these collateral consequences were not of constitutional magnitude and could not be transformed into direct consequences.

In accordance with the clarification in *Budziszewski* of counsel's duty to unequivocally inform a client of the mandatory deportation as a consequence of pleading guilty to an aggravated felony, the habeas court improperly concluded that Freeman's performance was not deficient. Specifically, Freeman failed to comply with *Padilla* because he did not explain the clear immigration consequences set forth in federal law in an accurate manner and in terms that the petitioner could comprehend. *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 515. The immigration consequences in this case were clearly discernable; a conviction of larceny in the third degree with a sentence greater than one year constituted an aggravated felony for immigra-

tion purposes and thus federal law mandated deportation. Freeman, therefore, was obligated to convey to the petitioner unequivocally this consequence of pleading guilty. See id., 512. There was no evidence in the record, nor did the habeas court specifically find that Freeman was aware that the crime and sentence[12] to which the petitioner pleaded guilty constituted an aggravated felony for purposes of immigration law. Moreover, even if the habeas court expressly had credited Freeman's testimony that larceny in the third degree is a crime of moral turpitude and therefore could "create some problems with regard to . . . immigration," this statement does not meet the required standard set forth in *Padilla*. We conclude, therefore, that this advice is akin to the advice given in *Budziszewski* where counsel warned of a "heightened risk of deportation . . . ." (Internal quotation marks omitted.) *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 512.

Simply put, Freeman was required to inform the petitioner that, as a result of his guilty plea to a crime that fell within the federal definition of an aggravated felony, he was subject to mandatory deportation under federal law, which Freeman failed to do. His advice did not meet the standard set forth in *Padilla* as interpreted by *Budziszewski*. Accordingly, we agree with the petitioner that the habeas court improperly determined that Freeman was not deficient, under *Strickland*, with respect to his advice regarding the immigration consequences in the Hartford case.

B

The petitioner next argues that the habeas court improperly concluded that he was not prejudiced as a result of the deficient performance of Freeman and Goulet-Case. Specifically, he contends that prejudice should be presumed in the present case because the proceedings were presumptively unreliable or entirely nonexistent; additionally, he claims that he suffered "extreme prejudice" by having an aggravated felony conviction on his record, by being incarcerated in both state and federal facilities, and by being deported and prevented from returning to the United States. Because prejudice is not presumed in this case, and the petitioner's appellate brief failed to directly challenge the habeas court's determination that the petitioner would not have pleaded guilty and would have insisted on going to trial, his claim of ineffective assistance of counsel must fail.

The following additional facts are necessary for our discussion. At the habeas trial, the petitioner testified that he would not have pleaded guilty to a crime that was an aggravated felony if he had known of its immigration consequences. He later indicated that because he was not aware of any possible effect as to his immigration status, the petitioner's trepidation about entering a plea related to the loss of his employment and

the conviction of a serious crime. During his direct examination, the petitioner was asked if he would have accepted that offer had he known that his guilty plea in the Hartford case would result in his deportation. He responded: "I would not have submitted a guilty plea in this case. The guilty plea was proposed as a way of trying to, if you will, clear the matter in the— as quick a way as possible. Taking responsibility for what I was involved with . . . [by] paying restitution. But as a far as—that was the farthest thing from my mind. I wouldn't want to lose seventeen years of teaching, two college degrees, my two sons, all of the community groups—church, friends, networks, family—just in order to remove a guilty plea? I would not expose myself to that consciously. No. Absolutely not." He further stated that he would have accepted another disposition in order to avoid deportation, including going to trial or accepting a sentence with additional jail time.[13]

The habeas court determined that the petitioner failed to sustain his burden of establishing prejudice. It concluded that no rational individual would have rejected the plea agreement in the Hartford case. "Had the petitioner brought in the agreed upon restitution that he assured [Freeman] he had the means to easily satisfy, there would have been no conviction, no criminal record, no immigration issues and the petitioner could have resumed his seemingly productive life. Indeed, rejection of the plea bargain under the circumstances of this case would have been irrational."[14] (Emphasis omitted.)

In addressing the New Britain case, the habeas court noted that Goulet-Case performed deficiently by assuming that the petitioner was a citizen of the United States. "Nevertheless, given that the New Britain case played no part in the immigration issue and there was no showing of any other prejudice incurring to the petitioner, this court will deny habeas relief on that ground." The habeas court then cited to the *Hill* modification of the prejudice prong.

On appeal, the petitioner, citing to *Roe* v. *Flores-Ortega*, 528 U.S. 470, 484, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), notes that "[p]rejudice may be presumed, however, when a violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." (Internal quotation marks omitted.) To the extent that he implicitly claimed that a presumption of prejudice exists in the present case, we reject that view. In *Roe* v. *Flores-Ortega*, supra, 483, the United States Supreme Court observed: "In some cases . . . the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was— either actually or constructively—denied the assistance of counsel altogether. The presumption that counsel's assistance is essential requires us to conclude that a

trial is unfair if the accused is denied counsel at a critical stage. . . . Under such circumstances, [n]o specific showing of prejudice [is] required, because the adversary process itself [is] presumptively unreliable." (Citations omitted; internal quotation marks omitted.) See, e.g., *Smith* v. *Robbins*, 528 U.S. 259, 287, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (three categories of cases where prejudice is presumed are denial of counsel, various kinds of state interference with counsel's assistance and actual conflict of interest for counsel); *Penson* v. *Ohio*, 488 U.S. 75, 85–89, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988) (prejudice presumed when state appellate court improperly granted motion to withdraw filed by appointed appellate counsel and improperly failed to appoint new counsel); *United States* v. *Cronic*, 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (no showing of prejudice required when counsel either was absent totally or prevented from assisting accused during critical stage of proceeding); see also *State* v. *Davis*, supra, 319 Conn. 555–68 (complete breakdown in adversarial process occurred, resulting in presumption of prejudice, when defense agreed at sentencing to prosecutor's recommendation of twenty-five years incarceration, thus forfeiting right to argue for lesser sentence).

The present case does not rise to the level of those where prejudice was presumed. Instead, this case involved an "attorney error," rather than an actual or constructive denial of the assistance of counsel; thus, the petitioner bore the burden of establishing prejudice. *Roe* v. *Flores-Ortega*, supra, 528 U.S. 482. Simply put, the petitioner was required to establish prejudice, as set forth in *Hill* v. *Lockhart*, supra, 474 U.S. 58–59, to prevail on his claim of ineffective assistance of counsel.

As we previously stated, the *Hill* prejudice standard provides that "[i]n the context of a guilty plea . . . to succeed on the prejudice prong the petitioner must demonstrate that, but for counsel's alleged ineffective performance, the petitioner would not have pleaded guilty and would have proceeded to trial." (Internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015); see also *Thiersaint* v. *Commissioner of Correction*, supra, 316 Conn. 101; *Saksena* v. *Commissioner of Correction*, 145 Conn. App. 152, 156, 76 A.3d 192, cert. denied, 310 Conn. 940, 79 A.3d 892 (2013). "In evaluating whether the petitioner had met this burden and evaluating the credibility of the petitioner's assertions that he would have gone to trial, it was appropriate for the court to consider whether a decision to reject the plea bargain would have been rational under the circumstances. *Padilla* v. *Kentucky*, supra, 559 U.S. 372." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 280.

During the habeas trial, the petitioner testified that had he known that he would have been deported, he would not have pleaded guilty to larceny in the third degree with a period of incarceration greater than one year. A review of his testimony reveals that had he been aware of the immigration consequences, they would have been the primary factor in his decision as to whether to plead guilty. Cf. id. (petitioner was not concerned with immigration consequences but stigma attached to conviction of sexual assault of minor and reducing jail sentence); *Nivers* v. *Commissioner of Correction*, 101 Conn. App. 1, 5–6, 919 A.2d 1073 (2007) (petitioner's primary concern was minimizing amount of time in jail and petitioner was not troubled by potential for deportation).

The habeas court, however, did not credit the petitioner's testimony that he would have rejected the plea and proceeded to trial. Instead, it concluded that no rational person would have rejected the plea deal in the Hartford case. It also determined that there was no showing of prejudice in the New Britain case. On appeal, however, the petitioner has not directly challenged the court's conclusion that he would not have accepted the plea deal and proceeded to a trial. Instead, the petitioner argues in his brief that he was prejudiced as a result of "having an aggravated felony conviction on his record . . . by having served twenty-two months in immigration detention in addition to the sixty days he served as part of his sentence . . . [by having been removed] from this country and from his permanent inadmissibility as a result of his aggravated felony conviction . . . [and by the] additional disruption this has caused in his otherwise productive life." Undoubtedly, these events have had a negative impact and caused disruption to the life of the petitioner. They do not, however, apply to the relevant legal inquiry, which is the test for prejudice as set forth in *Hill* v. *Lockhart*, supra, 474 U.S. 58–59. Further, the petitioner failed to provide this court with any applicable authority[15] that the events detailed in his brief constitute the prejudice necessary to establish a successful claim of ineffective assistance of counsel. Simply put, his appellate argument missed the mark and we are left, essentially, with an unchallenged conclusion of no prejudice from the habeas court. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 155–56, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016). The petitioner failed to establish that he was denied his constitutional right to the effective assistance of counsel and, therefore, the habeas court properly denied counts two and three of the habeas petition. We conclude, therefore, that the petitioner failed to demonstrate that his issues regarding Freeman and

Goulet-Case are debatable among jurists of reasons, that a court could resolve the issues in a different manner or that they are adequate to proceed further. Thus, the habeas court did not abuse its discretion in denying certification to appeal as to the petitioner's claims of ineffective assistance of counsel. See *Sanders* v. *Commissioner of Correction*, supra, 169 Conn. App. 838.

## II

The petitioner also claims that the habeas court improperly denied certification to appeal the habeas court's denial of his due process claim that his pleas were not made knowingly and voluntarily. Specifically, he argues that because counsel did not explain that mandatory deportation was the result of his guilty pleas, the pleas were not knowing and voluntary, and, thus in violation of his right to due process. We disagree with the petitioner and conclude that the habeas court did not abuse its discretion in denying certification to appeal as to this issue.

The following additional facts are necessary for our discussion. In its articulation, the habeas court expressly addressed the petitioner's due process claim: "Although the claim in count one is alleged as a freestanding separate claim, it nevertheless is, in this court's analysis and a fair reading of the factual allegations, wholly dependent on the claims alleged in the other two counts. It is counsel, if anyone, who would have a duty to properly advise the petitioner that he would 'know or understand the probability of deportation/removal under the terms of the plea agreement.' Stated somewhat differently, the petitioner cannot prevail on the claim in count one, as it is factually and legally pleaded, without also proving the claims in counts two and three."

Our recent decision in *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 266, guides our resolution of this issue. In that case, Henry Flomo claimed that his guilty plea was not knowingly, intelligently and voluntarily made because the trial court failed to ensure that he understood fully the immigration consequences of his plea. Id., 268. At the outset of the analysis in that case, we stated: "As established by the United States Supreme Court in *Boykin* v. *Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the

plea connotes and its consequences. . . . We therefore require the record affirmatively to disclose that the defendant's choice was made intelligently and voluntarily. . . .

"The *Boykin* constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . Those rules provide that the trial court must not accept a guilty plea without first addressing the defendant personally in open court and determining that the defendant fully understands the items enumerated in § 39-19, and that the plea is made voluntarily pursuant to § 39-20. *There is no requirement, however, that the defendant be advised of every possible consequence of such a plea.* . . . Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . .

"Immigration consequences of a plea are among those that our Supreme Court already has indicated are collateral in nature and, therefore, cannot implicate the constitutional concerns of *Boykin*. In *State* v. *Malcolm*, [257 Conn. 653, 778 A.2d 134 (2001)], the issue before the court was whether a trial court properly had granted a defendant's motion to withdraw his guilty plea on the ground that the court had failed specifically to mention all three immigration and naturalization consequences set forth in General Statutes § 54-1j, which imposes a statutory requirement that trial courts not accept a guilty or nolo contendere plea without first canvassing the accused to ensure that he or she fully understands the immigration consequences of the plea. Our Supreme Court concluded that, just as with the canvass requirements set forth in Practice Book § 39-19 to ensure that a plea is voluntary, only substantial compliance with § 54-1j, not a verbatim reading of the statutory language, is required. *State* v. *Malcolm*, supra, 661–63. In reaching that conclusion, the court also noted: Although we do not mean to minimize the potential impact of the immigration and naturalization consequences of a plea, *they are not of constitutional magnitude*: The statutory mandate [of § 54-1j] . . . cannot transform this collateral consequence into a direct consequence of the plea. It can only recognize that this collateral consequence is of such importance that the defendant should be informed of its possibility." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 282–85.

We noted that the trial court had informed Flomo that pleading guilty to risk of injury to a child could result in his deportation if he was not a citizen of the United States.[16] Id., 285. Flomo indicated that he had discussed these immigration consequences with his attorney and that he did not need time for additional discussions. Id. We concluded, therefore, that the trial

court had substantially complied with § 54-1j. We also stated that *Padilla*'s rejection "as an analytical tool evaluating whether immigration consequences are direct versus collateral" was limited to sixth amendment claims regarding the right to counsel. Id.

We acknowledge that the legal issue in *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 281–86, of whether the trial judge failed to ascertain if Flomo understood the immigration consequences of his plea and as a result, acceptance of the plea violated his right to due process, differs from the petitioner's claim in the present case. Here, the petitioner claims that as result of both counsel's failure to inform him of the immigration consequences, his pleas were not knowingly and voluntarily made and, therefore, a violation of due process. This distinction, however, does not change the fact that "[i]mmigration consequences of a plea are among those that our Supreme Court already has indicated are collateral in nature and, therefore, cannot implicate the constitutional concerns of *Boykin*." Id., 283. Put another way, the immigration consequences of a guilty plea, while significant, do not fall within the ambit of the constitutional requirements[17] for a valid plea as mandated by *Boykin*.

Additionally, we agree with the habeas court that the petitioner's due process claim is wholly dependent on his ineffective assistance of counsel claim, which we already have rejected in part II of this opinion. "In a situation such as this, where the petitioner's claim of a violation of due process is so inextricably bound up in the issue of the effectiveness of his trial counsel, we conclude that a separate claim of a violation of the right to due process is not required. . . . Because it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected, we believe the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is [through] a claim of ineffective assistance of counsel [pursuant to] *Strickland* v. *Washington*, [supra] 466 U.S. 668 . . . ." (Internal quotation marks omitted.) *Commissioner of Correction* v. *Rodriquez*, 222 Conn. 469, 476, 610 A.2d 631 (1992); see also *Braham* v. *Commissioner of Correction*, 72 Conn. App. 1, 12–13, 804 A.2d 951, cert. denied, 262 Conn. 906, 810 A.2d 271 (2002); *Rivera* v. *Commissioner of Correction*, 61 Conn. App. 825, 833–34, 767 A.2d 790, cert. denied, 256 Conn. 903, 772 A.2d 596 (2001); see generally *Iovieno* v. *Commissioner of Correction*, 67 Conn. App. 126, 129, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002). Therefore, for these reasons, we conclude that the habeas court properly rejected the due process claim raised by the petitioner. We further conclude that the habeas court did not abuse its discretion in denying certification to appeal with respect to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] In its memorandum of decision, the habeas court stated: "The petitioner was born in Jamaica in 1970 and . . . first came to this country with his parents as a legitimate and lawful immigrant when he was about sixteen years old. He attended college and graduate school in the United States, earning a master's degree in civil engineering from Pennsylvania State University. He had a long history of substantial gainful employment and in 2009 when his legal problems began, he was employed as a professor at the Capital Community College earning a good salary. He married . . . and has two children, both of whom are United States citizens. The petitioner never sought or completed naturalization proceedings and therefore remained a citizen of Jamaica lawfully admitted as a permanent resident of the United States."

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Robles*, 169 Conn. App. 127, 128 n.1, 150 A.3d 687 (2016), cert. denied, 324 Conn. 906, A.3d (2017).

[3] The petitioner had brought a $1000 check from a local business as part of the $3000. The court noted that this was contrary to its explicit instructions and therefore it was not confident that the petitioner had, in fact, brought $3000 to the sentencing.

[4] In this case, the court, *Cobb, J.*, was notified, prior to the habeas trial, that the petitioner had been deported. On February 13, 2013, it issued an order postponing the trial and instructing the parties to submit briefs on the question of whether the deportation had rendered the habeas petition moot. After considering the briefs of the parties and reviewing federal law, the court concluded that the case was not moot. The court stated: "Here, the basis of the petitioner's removal in this case was his state court convictions. If the petitioner is successful in prosecuting this habeas petition, the result would be an order of this court vacating his conviction. Based on federal precedents . . . it appears that if the petitioner's convictions are vacated, he could seek relief from the federal authorities to cancel or reopen his immigration proceedings in order to seek reentry into this country. Accordingly, the court finds that there is practical relief that this court could provide as a result of this case to the petitioner . . . ."

In the memorandum of decision on the merits, Judge Fuger did not address the issue of mootness, aside from a footnote mentioning Judge Cobb's decision. The petitioner did not address the issue of mootness in his appellate brief, and the respondent argued only briefly that unless the petitioner could prevail on his claim of ineffective assistance of counsel in both the Hartford and New Britain cases, then these proceedings are moot.

We also note that the present case is distinguishable from cases where our appellate court found mootness following deportation. The distinguishing factor is that the basis for the petitioner's deportation, his conviction of a crime that constituted an aggravated felony, and his conviction of a crime of moral turpitude both are the subject of this appeal. Cf. *State* v. *Aquino*, 279 Conn. 293, 298, 901 A.2d 1194 (2006) (no evidence in record as to reason for deportation); *State* v. *Jerzy G.*, 162 Conn. App. 156, 164, 130 A.3d 303 (2015) (defendant failed to prove that termination of accelerated rehabilitation was reason for deportation), cert. granted, 320 Conn. 919, 132 A.3d 1093 (2016); *St. Juste* v. *Commissioner of Correction*, 155 Conn. App. 164, 181, 109 A.3d 523 (conviction at issue was not only impediment to reentry to United States), cert. granted, 316 Conn. 901, 111 A.3d 470 (2015).

[5] Collins testified that, in his expert opinion, a noncitizen convicted of larceny in the third degree with a sentence of more than one year would be facing an "almost automatic deportation." He further indicated that as a result of this conviction of an aggravated felony, it would be "extremely difficult" for the petitioner to return to the United States.

[6] The petitioner participated in the habeas trial from Jamaica via videoconference.

[7] The petition for certification to appeal stated the following issues that the petitioner intended to raise on appeal: (1) whether he received the effective assistance of counsel in the Hartford case; (2) whether he received

the effective assistance of counsel in the New Britain case; (3) whether his right to due process was violated in the Hartford case; (4) whether his right to due process was violated in the New Britain case; (5) whether the habeas court erred by finding that a guilty plea to larceny in the third degree with the adjudication of guilty withheld and the entry of a nolle contingent on the payment of restitution would not constitute a conviction for federal immigration purposes; (6) whether the habeas court failed to adequately determine the facts and issues related to the claim that the petitioner's right to due process was violated in the Hartford case; (7) whether the habeas court failed to adequately determine the facts and issues related to the claim that the petitioner's right to due process was violated in the New Britain case; and (8) any further issues that became apparent after a complete review of the habeas trial transcript.

The petition for certification to appeal claimed that under our law, it would be an abuse of discretion to deny the petition for certification to appeal if the appeal would not be frivolous. It further explained: "The petitioner's claims are not frivolous because the claims are mixed questions of law and fact, on appeal the claims are subject to plenary review, and the claims are at least debatable among jurist of reasons. The third and fourth claims are especially worthy of appellate review because the question of whether immigration consequences should be considered 'direct consequences' of guilty pleas in light of the United States Supreme Court's ruling in *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), is an issue of first impression in Connecticut."

[8] Freeman later testified that if one of his clients did not or could not consult with an immigration attorney, his general practice would be to contact such an attorney himself to "get some advice and maybe some case law to support that advice."

[9] We note that the habeas court in the present case issued its decision on September 8, 2014, and our Supreme Court's opinion in *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 504, was not released until August 16, 2016, nearly two years later.

[10] In *Abimbola* v. *Ashcroft*, 378 F.3d 173, 180 (2d Cir. 2004), cert. denied sub nom. *Abimbola* v. *Gonzales*, 546 U.S. 1036, 126 S. Ct. 734, 163 L. Ed. 2d 577 (2005), the United States Court of Appeals for the Second Circuit held that Connecticut's larceny in the third degree statute constitutes an aggravated felony for federal immigration purposes. More recently, in *Almeida* v. *Holder*, 588 F.3d 778, 783 (2d Cir. 2009), the court stated: "Under the Immigration and Nationality Act (INA), an alien [statutorily defined as person who is not a citizen or national of the United States; see 8 U.S.C. § 1101 (a) (3)] is removable if he is convicted of an aggravated felony at any time after admission. 8 U.S.C. § 1227 (a) (2) (A) (iii). The INA defines aggravated felony to include any theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year. 8 U.S.C. § 1101 (a) (43) (G)." (Footnote omitted; internal quotation marks omitted.) The court in *Almeida* reaffirmed the reasoning of *Abimbola* and concluded that larceny in the second degree falls within the definition of an aggravated felony. *Almeida* v. *Holder*, supra, 789.

[11] This finding is not supported by the record and therefore is clearly erroneous.

[12] We note that pursuant to 8 U.S.C. § 1101 (43), an aggravated felony under subparagraph (G) includes "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year . . . ." Furthermore, 8 U.S.C. § 1227 (a) (2) (A) (iii) clearly provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Additionally, as we noted in footnote 10 of this opinion, there are two cases from the United States Court of Appeals for the Second Circuit holding that our larceny statutes, coupled with a sentence of more than one year, constitute aggravated felonies for federal immigration proposes. See *Almeida* v. *Holder*, 588 F.3d 778, 783 (2d Cir. 2009); *Abimbola* v. *Ashcroft*, 378 F.3d 173, 180 (2d Cir. 2004), cert. denied sub nom. *Abimbola* v. *Gonzales*, 546 U.S. 1036, 126 S. Ct. 734, 163 L. Ed. 2d 577 (2005). It is apparent that significant legal research or knowledge of immigration law was not necessary to comprehend the petitioner's predicament.

[13] The petitioner testified that a sentence with additional jail time but no deportation "would be acceptable because deportation implies never seeing my sons grow up or building any future on the foundation that I've already laid after twenty-six years of living in the United States. Um, accepting the consequences for an action, however severe, is an important part of moral

responsibility. But making a choice without knowledge that leads to a conse-quences like what—I—I call this exile. I don't know—deportation sounds like a nicer word, but it would be a better option than being forced to be separated from my family and my career. Absolutely.'' The petitioner further indicated that he would have risked going to trial even if it could have resulted in a longer term of incarceration followed by deportation.

[14] The habeas court subsequently iterated its determination regarding the lack of prejudice: "Moreover, given the extraordinarily favorable terms of the proposed agreement and the failure of the [petitioner] to live up to his promises, this court concludes there has been no prejudice and if there has been any it is the petitioner's own fault, not his lawyers'.''

[15] The petitioner cited to *Rutledge* v. *United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996), *United States* v. *Estrada*, 751 F.2d 128 (2d Cir. 1984), cert. denied, 474 U.S. 830, 106 S. Ct. 97, 88 L. Ed. 2d 79 (1985); *United States* v. *Buckley*, 586 F.2d 498 (5th Cir. 1978), cert. denied, 440 U.S. 982, 99 S. Ct. 1792, 60 L. Ed. 2d 242 (1979), and *United States* v. *Rosenthal*, 454 F.2d 1252 (2d Cir.), cert. denied, 406 U.S. 931, 92 S. Ct. 1801, 32 L. Ed. 2d 134 (1972), in support of his argument regarding prejudice. After reviewing these cases, we conclude that they are inapplicable to the issue of prejudice, as established in *Hill* v. *Lockhart*, supra, 474 U.S. 58–59.

[16] As set forth previously in this opinion, the court in both the Hartford and New Britain cases informed the petitioner of the possible immigration consequences of his guilty pleas.

[17] "[B]efore accepting a defendant's plea, a trial court must inform him of three core constitutional rights: His right to be free of compulsory self-incrimination, and his rights to a jury trial and to confront his accusers.'' (Internal quotation marks omitted.) *State* v. *Benitez*, 67 Conn. App. 36, 42, 786 A.2d 520 (2001), cert. denied, 259 Conn. 922, 792 A.2d 855 (2002); see also *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 286 n.13.